## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**TERRY LYNN BARBER**                                                    **PETITIONER**

**v.**                                                                   **No. 3:23CV90-SA-RP**

**STATE OF MISSISSIPPI, ET AL.**                                         **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Terry Lynn Barber for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Barber has replied and submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus.*

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Facts and Procedural Posture[1]

### Convictions and Sentences

Terry Lynn Barber is in the custody of the Mississippi Department of Corrections ("MDOC") and is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. He received a two-and-a-half-year sentence for possession of methamphetamine following his revocation from parole – and a consecutive eight-year sentence as a subsequent and habitual offender, also for possession of methamphetamine.[2] The details of Barber's conviction and sentence are set forth below (with further detail provided, as needed, in the discussion of the issues).

### DeSoto County Circuit Court Cause No. CR 2016-0037

---

[1] The court has drawn the facts and procedural posture of this case from the State's Answer, as they are both well-documented and uncontested.

[2] Barber completed the two-and-a-half-year sentence on July 14, 2022. *See* Doc. 13-1, MDOC Inmate Time Sheet ("Out of Trusty Status 07/14/22. Removal from TET [Trusty Earned Time] due to starting Habitual Sentence.")

Barber was indicted in DeSoto County Circuit Court Cause No. CR 2016-0037 as a habitual offender for the possession of 0.1 grams or more, but less than two grams of methamphetamine. *See* Exhibit B.[3] The trial court sustained the parties' subsequent agreed request to charge Barber as a non-habitual offender. *See* Exhibit C. Barber pled guilty to that reduced charge and was sentenced on July 17, 2018, to serve a term of one day in MDOC custody before being placed on two years and six months of non-reporting post-release supervision. *See* Exhibit D;[4] *see also* DeSoto County Circuit Court Cause No. 2016-0037, MEC Docs. 18, 19, 26.[5]

However, on October 22, 2020, the State filed a "Petition to Revoke Post-Release Supervision," because Barber: (1) failed to pay assessments and (2) committed a new crime—possession of a methamphetamine. *See* Exhibit E. On January 29, 2021, the DeSoto County Circuit Court entered its "Order to Revoke Post-Release Supervision/Suspended Sentence," as Barber had violated the terms of his post-release supervision. *See* Exhibit F. The trial court revoked two years and six months of Barber's "post-release supervision/ suspended sentence" and awarded seventy-nine days credit against his sentence for time in custody. *See* Exhibit F.

---

[3] The exhibits referenced in this memorandum opinion may be found attached to the State's response to the instant petition for a writ of *habeas corpus*.

[4] The trial court's sentencing order also stated that Barber's sentence in DeSoto County Circuit Court Cause No. CR 2016-0037 was ordered to run concurrently with his conviction and sentence in Panola County Circuit Court Cause No. 2015-64. *See* Exhibit D.

[5] The State has filed, along with its Answer, relevant documents as posted on the Mississippi Electronic Case (MEC) System in DeSoto County Circuit Court Cause No. 2016-0037. The court will refer to those documents using the trial court cause number, followed by MEC document number on the trial court's electronic docket.

Barber's Inmate Time Sheet reflects that he was "released on parole" on December 14, 2021. *See* Exhibit A.[6]

### DeSoto County Circuit Court Cause No. CR 2020-0804

Meanwhile, on October 14, 2020, Barber had been indicted in DeSoto County Circuit Court Cause No. CR2020-0804 for the possession of two grams or more but less than 10 grams of methamphetamine as a subsequent and habitual offender. State Court Record (SCR), Vol. 1 at 11.[7] The jury returned a verdict of guilty, and on December 16, 2021, the trial court sentenced Barber as a recidivist habitual offender to serve a term of eight years, with five years of reporting post-release supervision and three years of non-reporting post-release supervision. *See* Exhibit H; *see also* SCR, Vol. 1 at 86–87, 102–05.

### Parole Revocation

Following Barber's December 2021 release from MDOC custody on parole in Cause No. CR 2016-0037 – and his conviction for the new crime of possession of methamphetamine – MDOC issued a "Warrant for Retaking Paroled Prisoner" in January 2022. *See* Exhibit I. Barber was returned from parole under the Parole Revocation Hearing Action of the Parole Board on January 25, 2022, to complete the remainder of his two-and-a-half-year sentence. *See* Exhibit J; *see also* Exhibit A (Inmate Time Sheet); ECF Doc. 8 at 7. Barber's time sheet

---

[6] Barber's Parole Certificate reflects that he was released to the custody of DeSoto County because of his then-pending charges in DeSoto County Circuit Court Cause No. CR 2020-0804. *See* Exhibit G.

[7] References to the record of Barber's direct appeal in Cause No. 2022-KA-00291 are designated as "SCR" with the appropriate volume and page number of that state court record. References to Barber's pending state post-conviction action in the Mississippi Supreme Court are designated as SCR, Cause No. 2023-M-1152. Barber's state appellate records, along with relevant records from the Desoto County Circuit Court may be found on the court's docket.

reflects that he was removed from trusty status on July 14, 2022, because he began serving his eight-year habitual sentence (which precludes his placement on Trusty status).  *See* Exhibit A.[8]

**Direct Appeal**

Barber's parole revocation was not appealable under state law.  *See Beasley v. State,* 795 So. 2d 539 (Miss. 2001) (citation omitted) (an order revoking suspension of sentence or revoking probation is not appealable).   Barber nonetheless attempted to appeal his possession of methamphetamine conviction and resulting eight-year sentence in Cause No. CR2020-804 to the Mississippi Supreme Court.

Barber's appellate counsel filed a brief in accordance with *Lindsey v. State,* 939 So. 2d 743 (Miss. 2005), certifying that after diligent search and review of the record, there were no arguable issues which, in good faith, could be presented to the state court.  *See* SCR, Brief of Appellant.   Barber filed a *pro se* Appellant's Brief, setting forth the following "statement of the issue":

> A.     The facts of the issue is that "Barber" has not had a fair trial for malicious misconduct of Public Defender "Gordon Shaw" under Rules of Professional Conduct.   Perjured testimony from Detective "Jacob Bramlett" and false aligations [sic] of the reports and statements of "Hosie Porter" and "Jacob Bramlett" concerning the place and events on June 5th, 2019.   Also the violations of the defendant's rights under the United States and Mississippi Constitution[s].   The wrongful acts of misconduct by the Honorable Judge "Gerald W. Chatham, Sr." Circuit Court of DeSoto County 17th District under the rules of criminal procedure and rules of evidence.   "Suppression of Evidence."

SCR, *Pro Se* Brief of Appellant at 3.   Within Barber's *pro se* filing, he also alleged:

---

[8] A representative of the parole board confirmed for the State that Barber's case was again presented to the parole board on December 20, 2023, and the Action of the Parole Board form reflects that the Board documented his eligibility to begin serving his eight-year habitual sentence in Cause No. CR2020-0804.   *See* Exhibit K.

B.      The evidence was insufficient to support his conviction, including a claim that his conviction resulted from "perjured testimony," and that there was no video or other photographic evidence.    SCR, *Pro Se* Brief of Appellant at 5, 10–11, 13–17.

C.      He was never issued a *Miranda* warning, and law enforcement misrepresented that he was under the influence.    SCR, *Pro Se* Brief of Appellant at 4–5, 18.

D.      His arrest and subsequent search were improper and in violation of the Constitution.    SCR, *Pro Se* Brief of Appellant at 5.

E.      Counsel was ineffective for: (1) failing to use compulsory process to "obtain[] witnesses in his favor[;]" (2) failing to investigate and present "secondary evidence" to prove his innocence; (3) "refus[ing] to ask the court to view the place in which [the] alleged act had taken place[;]" (4) failing to consult him or keep him reasonably informed; (5) "trying to coerce [him] into signing a plea[;]" (6) failing to investigate the "charge of Cause No. 2016-0037" and revocation details; and (7) "conspir[ing]" with the prosecution to exclude defense witnesses.    SCR, *Pro Se* Brief of Appellant at 6–9, 13–17, 19.

F.      He did not have a preliminary hearing within 72 hours of his arrest, and the revocation was not held within 21 days.    SCR, *Pro Se* Brief of Appellant at 6–9, 13–15, 19.

G.      He was denied the right to represent himself and was not fairly represented by counsel.    SCR, *Pro Se* Brief of Appellant at 8.

H.      His post-release supervision was "revoked unlawfully twice by Cause No. CR2020-0804GCD which is 'double jeopardy.'"    SCR, *Pro Se* Brief of Appellant at 8.

I.      Evidence introduced at trial was "inadmissible," and the trial court excluded evidence at trial.    SCR, *Pro Se* Brief of Appellant at 10–13, 15–16.

J.      The State's expert admitted that he "can't be sure of where the alleged substance had come from or if it had been tampered with prior to it being received at his crime lab."    SCR, *Pro Se* Brief of Appellant at 17.

K.      He was never served his indictment before trial. SCR, *Pro Se* Brief of Appellant at 18.

*See, generally,* SCR, *Pro Se* Brief of Appellant.[9]

After briefing was complete, Barber filed a "Petition for Release," requesting, among other things, to be released on bond. *See* SCR, Cause No. 2022-KA-00291, Case Folder. A month later, Barber filed a "Notice of Defamation Claim to Show Cause for Denial of Appeal Bond/ Recogni[z]ance." *See* SCR, Cause No. 2022-KA-00291, Case Folder. The Mississippi Supreme Court denied Barber's request for release "and his other requests for bond and release," for "fail[ure] to comport with Mississippi Rule of Appellate Procedure 9." *See* SCR, Cause No. 2022-KA-00291, Case Folder; *see also* Exhibit L.[10] The court also dismissed Barber's notice of defamation for failure to request any "relief [the state court] [could] grant." *See* Exhibit L; *see also* SCR, Cause No. 2022-KA-00291, Case Folder.

The Mississippi Supreme Court affirmed Barber's conviction and sentence in a *per curiam* decision entered July 6, 2023. *See* Exhibit N. Barber filed a motion for reconsideration of the court's decision and "Writ of Prohibition," which was treated as a motion to reconsider – and denied on September 14, 2023. *See* SCR, Cause No. 2022-KA-00291, Case Folder; *see* Exhibit O (decision letter). The state court issued its Mandate on September 21, 2023. *See* Exhibit P.

**State Post-Conviction Proceedings**

Meanwhile, Barber filed a "Motion to Compel" and attached "Notice of Motion" in the

---

[9] There is no direct appeal on a revocation; as such, Barber's claims related to the revocation were not properly before the state court on direct appeal of his conviction and sentence. *See Beasley v. State,* 795 So. 2d 539 (Miss. 2001).

[10] Before filing his "Petition for Release" in the appellate court, Barber filed a separate motion in the trial court, which the trial court treated as both a request for bond on appeal and for relief from his conviction and sentence, and denied in an Order filed January 23, 2023. *See* Exhibit M. On Barber's challenge to his conviction and sentence, the trial court held that his motion failed to comply with statutory requirements for seeking post-conviction relief. *Id.*

Mississippi Supreme Court on October 19, 2023 (with a signature date of October 3, 2023). SCR, Cause No. 2023-M-1152. In his pleading, Barber contends that the trial judge knew that Barber was never given a "*Miranda*" warning prior to his arrest or trial and alleges that there was no proof that he was under the influence. *See* SCR, Cause No. 2023-M-1152. Barber alleges that his trial without *Miranda* warnings violated local rules and statutes. On February 9, 2024, the Mississippi Supreme Court dismissed the October 19, 2023, Motion to Compel as moot. *See Barber v. State of Mississippi*, 2023-M-01152 (Order of February 9, 2024).[11]

**Federal *Habeas Corpus* Proceedings**

Barber, proceeding *pro se*, filed the instant petition for a writ of *habeas corpus* on March 28, 2023 (with a signature date of March 24, 2023). *See* Doc. 1. Barber raises the following grounds for relief in his petition (repeated here essentially verbatim):

**Ground One**: Illegal arrest on June 5, 2019, by Hernando Police Department. On June 5, 2019, I was arrested on a failure to appear that has never been produced. Have not been to court on and I have a document that says it was cleared by arrest which is not possible, and I bonded out of jail as the drug charge that police put on me. You can't bond out with an active [failure to appear warrant]. You have to be taken before a judge.

**Ground Two**: Failure of compulsory process to subpoena witnesses in favor of defendant's defense. Before trial I tried to dismiss counsel for this reason and represent self (*pro-se*) and the judge denied me those rights and made me s[it] through the trial and said Gordon Shaw was the attorney appointed to me and that was the attorney I had to use. This "does not" show in my transcript.

**Ground Three**: Defendant was never read his rights (*Mirandized*). On page 95 of my transcript the judge asked was the defendant

---

[11] Barber also filed a similar motion in the trial court, which was dismissed on December 15, 2023, for lack of jurisdiction. *See* Exhibit R.

> given a "*Miranda* warning" and the detective plainly states
> "No, sir." The judge proceeded on with trial.

Doc. 1 at 5–9. In response to paragraph 18 of the petition, Barber argues that his rights to

protection from Double Jeopardy were violated because he was allegedly sentenced twice for the

revocation, thus implicating his fundamental rights to overstep any procedural default under state

law. Doc. 1 at 14. In his prayer for relief, Barber requests that the court vacate his sentence in

CR2016-0037 imposed following his revocation based on an alleged "double jeopardy"

violation. Doc. 1 at 15. He also requests that the court vacate the sentence in CR2020-804

based on "failure of due process" for the trial court's alleged "failure" to follow the law because

he was not "*Mirandized* before trial." Doc. 1 at 15.

Barber also filed a "Notice of Defamation Claim" in June 2023 alleging that the trial

judge made "defamatory statements" during his sentencing. Doc. 4. Barber then briefly re-

urged his claim that the trial court "allowed" the trial to continue "after gaining knowledge the

plaintiff/movant had never been read his [*Miranda*] rights." Doc. 4. After the State answered

the petition, Barber filed a "Motion for Redress for Denial of Constitutional Rights" [8] with

attached exhibits, raising two additional claims for relief (summarized below):

**Ground Four**: Barber's right to protection from double jeopardy was violated because he is serving a sentence imposed a "second time" for an "unlawful revocation" under state law because was not revoked within thirty days of arrest. The "unlawful revocation by parole board" resulted in a double jeopardy violation. That claim involves a fundamental right and is thus excepted from the procedural bars in the state post-conviction act.

**Ground Five**: From the time of arrest to trial, Barber was never informed of his *Miranda* rights or the right to have counsel present in violation of Rule 5.2 of the Mississippi Rules of Criminal Procedure. Officers also gave false allegations that he was under the influence at the time of the arrest.

- 9 -

*See* Doc. 8.[12]

## Grounds One, Two, Three, and Five:
## Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One, Two, Three, and Five on the merits and decided those issues against Barber; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added).   The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).   The second exception, subsection (d)(2), applies to questions of fact.   *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).   Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law."   *Id.* (emphasis added).   A state court's decision

---

[12] The court has liberally construed Barber's pleading as a supplement to his petition.

- 10 -

is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Two, Three, and Five of the petitioner's claim.

Nevertheless, under § 2254(d)(2), these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has not met this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Facts Underlying Barber's Conviction for Possession of Methamphetamine in Cause No. CR 2020-804

The Hernando Police Department dispatched officers in response to repeated calls from concerned citizens regarding an eighteen-wheeler carrying a mobile home that was partially blocking a two-lane road in the area. SCR, Vol. 2 at 64, 66, 73–74, 76, 85, 87. Officer Christopher Blair was one of the first officers to arrive on the scene and began talking with the

people involved to assess the situation.   SCR, Vol. 2 at 64–67.   Officer Hosie Porter soon

arrived and encountered Barber, who provided him with pertinent identifying information.

SCR, Vol. 2 at 68, 77–78.   After relaying that information to dispatch, Officer Porter was told

that Barber had an active failure-to-appear warrant.   SCR, Vol. 2 at 68, 77.   Officer Porter

testified that the standard operating procedure for an active warrant was to "take the[]

[individual] into custody."   SCR, Vol. 2 at 77–78.   Part of that procedure involves a search of

the individual before the arrest to ensure officer safety – and to inventory that person's

belongings.   SCR, Vol. 2 at 78–79.

Officer Porter conducted a pat-down search of Barber, finding a plastic bag inside his

pocket which Porter believed to contain a controlled substance.   SCR, Vol. 2 at 78–79.   Barber

stated, "Aw, these are not my pants I have on."   SCR, Vol. 2 at 80; *see also* SCR, Vol. 2 at 69.

However, Barber produced no other clothing or a wallet on the scene.   SCR, Vol. 2 at 80–81.

Officer Porter contacted the on-call detective, Jacob Bramlett, to notify him concerning

the results of the search.   SCR, Vol. 2 at 71, 80.   Detective Bramlett testified that he told

Officer Porter to meet him at the police department, where he collected the clear plastic bag that

contained "alleged methamphetamine."   SCR, Vol. 2 at 91–93.[13]

Detective Bramlett took the bag containing the substance to the evidence room where he

heat-sealed it and wrote the total package weight on the outside.   SCR, Vol. 2 at 92–93.   He

dropped the bag in a secure evidence bin, and the bag was later entered into the Hernando Police

---

[13]   Detective Bramlett testified that he will "typically" go to the scene if drugs are
discovered during a traffic stop, but "since it was in Mr. Barber's or allegedly in his pocket, [he]
just asked Officer Porter to meet [him] and to transfer the evidence to [him] once [they] got to
the police department."   SCR, Vol. 2 at 91.   Detective Bramlett explained that for a traffic
stop, he normally would have "come out, done photographs," and "taken [the drugs] from the
scene right then."   SCR, Vol. 2 at 91.

Department's evidence system, then transported to the crime lab for analysis. SCR, Vol. 2 at 93, 96.

Detective Bramlett testified that he attempted to interview Barber, but Barber exhibited signs of intoxication—twitching, slurred speech, and rocking back and forth. SCR, Vol. 2 at 94–95, 97. Bramlett further explained that it was against his department's policy to interview intoxicated suspects; as such, he did not give Barber *Miranda* warnings or interview him. SCR, Vol. 2 at 95.[14]

Steve Sanders, an expert in forensic drug analysis, testified that the drugs brought to the crime lab from the Hernando Police Department were sealed when he received them. SCR, Vol. 2 at 105–06. He tested the substance and concluded to a reasonable degree of scientific certainty that the substance was 3.704 grams of methamphetamine. SCR, Vol. 2 at 109–10. Sanders' report and the bag of methamphetamine were introduced into evidence at trial. SCR, Vol. 2 at 111.

At trial, Barber's defense was essentially that he was "set up" to be arrested by law enforcement. But Officer Porter, the arresting officer who found the drugs in Barber's pocket, testified that he did not know Barber prior to his arrest. SCR, Vol. 2 at 81, 99. The State, on re-direct, showed that there was no evidence to suggest that Officer Porter knew Barber – which undermined Barber's defense that he had been unfairly targeted by law enforcement. SCR, Vol. 2 at 86–88, 99–100. The jury convicted Barber of possession of more than two but less than ten grams of methamphetamine. SCR, Vol. 2 at 146. The trial judge sentenced Barber to serve eight years in MDOC custody followed by eight years on post-release supervision – far less than the State's recommended sentence of sixteen years to serve. SCR, Vol. 3 at 158–68.

---

[14] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

### Claims Decided on the Merits in State Court

Barber's claims in Grounds One, Two, Three, and Five were decided on the merits in State court; as such, they are subject to the AEDPA's bar against relitigation under 28 U.S.C. § 2254(d).

### Ground One:   Illegal Arrest Because the State Did Not
### Produce Documents Supporting the "Failure to Appear" Warrant

In Ground One, Barber alleges that his arrest was illegal because the State did not produce documents supporting his arrest on the "failure-to-appear" warrant.   Doc. 1 at 5.   He alleges that he has never been to court on the failure-to-appear charge underlying his initial arrest – but acknowledges that he has "paperwork" stating that charge was cleared by his arrest.   Doc. 1 at 5.   In support of his contention that there was no failure-to-appear warrant, he argues that if there had been an active failure-to-appear warrant, then he would not have been permitted to post bond on the drug charge.   Doc. 1 at 5.   Hence, as he posted bond, he claims that there could not have been an active warrant.

This claim is contradicted by the record.   Officer Porter testified that, in response to a routine check on Barber's name and identifying information, dispatch informed him that Barber had an outstanding failure-to-appear warrant.   SCR, Vol. 2 at 77–78.   Indeed, Barber admits that he has (or has, at least, seen) paperwork to reflect that there was a failure-to-appear charge that has since been cleared.   Doc. 1 at 5.   Further, neither trial nor appellate counsel challenged the legality of Barber's arrest based on the outstanding warrant.[15]   Barber's allegations that his

---

[15]   In his motion for directed verdict, Barber's trial counsel argued there was no probable cause to detain or search Barber.   SCR, Vol. 2 at 117–18.   However, counsel did not acknowledge or reference the outstanding warrant in his argument.   The State countered by explaining that the probable cause for Barber's arrest was, indeed, the outstanding warrant discovered after Barber voluntarily gave his identifying information.   SCR, Vol. 2 at 119.

arrest was "illegal" are conclusory and unsupported by the record and thus do not support his request for federal *habeas corpus* relief.

Even if Barber could show that his arrest were "illegal," "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citations omitted); *see also Gerstein v. Pugh,* 420 U.S. 103, 119 (1975); *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995).

Thus, Barber has not shown that the state court's decision denying his claim as meritless was contrary to, or an unreasonable application of, clearly established federal law. Further, Barber has not shown that the state court's decision was based on an unreasonable determination of the facts based on the evidence presented. For these reasons, his claim for relief that his arrest was illegal must be dismissed.

### Ground Two:   Counsel Failed to Subpoena Witnesses

In Ground Two, Barber alleges that there was a "failure of [com]pulsory process" to subpoena witnesses in favor of [his] defense." Doc. 1 at 6. Barber states that he "tried to dismiss counsel for this reason" and represent himself, but the trial court denied his request and ordered that his appointed counsel would continue in his case. Barber explains that "[t]his 'does not' show in [his] transcript." Doc. 1 at 6. Liberally construed, Barber's claim is the same one he raised on direct appeal—that counsel was ineffective for failing to use the compulsory process to subpoena certain witnesses for the defense. As noted above, the Mississippi Supreme Court denied all claims Barber raised on direct appeal (including the present one) as meritless.[16]

---

[16] To the extent that Barber also briefly asserts that the trial court denied him his right to represent himself under Rule 7.1, Mississippi Rules of Criminal Procedure, that is an issue of state law. Errors of state constitutional, statutory, or procedural law cannot be resolved through a federal *habeas corpus* proceeding. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).

## Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were

---

In any event, the record does not support Barber's claim. He alleges that the trial judge "forced" him to sit through trial with counsel, even though that "does not show in [his] transcript." Doc. 1 at 6. However, Barber had the responsibility to present this issue to the state court prior to trial – and to ensure the record was correct prior to appeal. *See Underwood v. State*, 708 So. 2d 18, 26 (Miss. 1998) (citations omitted). In addition, the state court record contradicts his claim, as the record shows that Barber did not file any motion seeking to "represent himself" until *after* the jury verdict. SCR, Vol. 3 at 155 (post-trial motion); *see also* SCR, Vol. 1 at 84 (post-trial motion); Vol. 1 at 127 (post-trial motion). Once the jury had been excused, Barber stated on the record that he had "allowed Mr. Shaw here to represent [him]" and thanked the trial judge "for that" – then added that he was dissatisfied with counsel's representation at trial. SCR, Vol. 2 at 147–48. Nothing in the record shows that Barber was "forced" to sit through the trial with counsel – or was denied the right to represent himself.

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

In Ground Two, Barber argues that he tried to dismiss his counsel because counsel failed to subpoena witnesses for the defense. Doc. 1 at 6. First, Barber's claim is conclusory—he fails to state in his petition what witnesses counsel failed to subpoena – or to provide any proof about the testimony those witnesses might have given. Conclusory ineffective-assistance claims do not merit federal *habeas corpus* relief. *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002), (citing *Ross v. Estelle,* 694 F.3d 1008, 1012 (5th Cir. 1983) and its progeny). Hence, Barber has not shown that counsel's performance was deficient – or that he suffered any prejudice from counsel's alleged failure to investigate and call witnesses.

Even if the court were to construe Barber's petition to reference the potential witnesses named in his brief on direct appeal, Barber's claim fails. On appeal, Barber argued that counsel should have called former Sheriff, James Albert Riley, as well as "other witnesses"—"Att. Bob Giler, Att. Hidie Milam, Ruble Bryant, Dennis Johns, [and] Michael Lance." SCR, *Pro Se* Brief of Appellant at 15. Barber explained that "Bob Gilder and Hidie Milam were essential to prove harassment by [the] '[t]ask force'" that Detective Bramlett had been involved in at some point. SCR, *Pro Se* Brief of Appellant at 15. As in the present case, Barber made conclusory allegations throughout his *pro se* brief on appeal that counsel failed to call these witnesses. *See* Pro Se Brief of Appellant at 10 (stating former Sheriff Riley "would have proved perjured testimony by Detective 'Jacob Bramlett' and witnesses from the alleged arrest on June 5th, 2019 would prove 'Barber' was searched prior to Officer 'Hosie Porter' arriving at the s[c]ene and no evidence was found on 'Barber's' person"); 11 ("'Sheriff Riley' would have been essential in

proving harassment against 'Barber' by Detective Bramlett and Desoto County"); 13 ("witnesses" could have testified no evidence found on Barber); 16 (additional assertions related to Sheriff Riley).

But "[c]omplaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative. " *Sayre v. Anderson,* 238 F.3d 631, 635–36 (5th Cir. 2001) (citations omitted). As part of such a claim, Barber must "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Barber's bare assertions do not come close to this standard, especially given the strong evidence against him presented at trial. Indeed, nothing in the record supports a finding that these witnesses were available and would have testified – or that they would have testified as Barber suggests.

Tellingly, trial counsel cross-examined the State's witnesses to challenge their credibility, *including questions about whether they had any prior knowledge of Barber*. SCR, Vol. 2 at 72–73, 84–86, 96–98. None did. *Id.* Counsel specifically cross-examined Detective Bramlett regarding whether he knew or had worked under former Sheriff Riley—which Bramlett denied. SCR, Vol. 2 at 98. Counsel's decision not to call the named witnesses is, by its nature, a strategic one. Given Barber's criminal history, the proposed witnesses could well have provided inculpatory evidence – and certainly would have been subject to cross-examination. Strategic decisions regarding whether to call a witness cannot form the basis to find that counsel's performance was deficient. *See Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984) ("[T]he failure to present a particular line of argument or evidence is presumed to have been the result of

strategic choice."); *see also United States v. Jones,* 287 F.3d 325, 331 (5th Cir. 2002); *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir.1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.")   Put simply, counsel does not enjoy the crystal clarity of hindsight during the rigors of trial.

Finally, Barber cannot show that he suffered legal prejudice from counsel's decision. Even if Sheriff Riley would have testified as Barber alleges, Detective Bramlett was neither the arresting officer nor the officer who recovered the drugs from Barber's pocket during the search incident to his arrest.   Detective Bramlett did not go to the scene; instead, he told Officer Porter to transport the drugs found on Barber to the police department.   SCR, Vol. 2 at 91–93. Nothing in the record suggests that the other named witnesses were present when Officer Porter conducted his pat-down search of Barber – or had any testimony relevant to his defense.

For these reasons, the state court's decision denying his claim as meritless was neither contrary to, nor an unreasonable application of, clearly established federal law.   Nor was the state court's decision was based on an unreasonable determination of the facts based on the evidence.   As such, this claim should be dismissed with prejudice.

**Grounds Three and Five:   Failure to Give *Miranda* Warnings**

In Ground Three, Barber alleges that no one read him his *Miranda* rights.   Doc. 1 at 9. In Ground Five, Barber again alleges that he was never advised of his rights under *Miranda*, including his right to counsel; as such, his "statements" were not admissible in court.   Doc. 8 at 4.   In Ground Five, Barber also alleges a violation of Rule 5.2 of the Mississippi Rules of Criminal Procedure (regarding initial appearances) and contends that officers gave "false allegations" that he was under the influence at the time of his arrest.   Doc. 8 at 4.

- 19 -

Detective Bramlett confirmed at trial that he did not *Mirandize* Barber because he appeared intoxicated. SCR, Vol. 2 at 94–95, 97. Detective Bramlett testified that he did not interview Barber because department policy is not to interview someone who is suspected of being under the influence. SCR, Vol. 2 at 95. Indeed, Barber did not give any statement arising out of a police-initiated interrogation.[17]

The record reflects, instead, that the only statement Barber made was at the scene after Officer Porter had recovered the drugs from Barber's pants pocket – while Barber claimed that the pants he was wearing did not belong to him. SCR, Vol. 2 at 80. The State did not conduct a custodial interrogation; as such, the arresting officer was not required to give *Miranda* warnings – which only apply to custodial interrogation. *Miranda*, 384 U.S. at 444, 478–79 (explaining that the accused must be warned of his rights to remain silent and to an attorney *before a custodial interrogation*). Thus, the state court's decision rejecting Barber's claims in Grounds Three and Five as meritless was neither contrary to or an unreasonable application of, clearly established federal law; nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented. As such, Barber's claims in Grounds Three and Five alleging a *Miranda* violation are without merit.

To the extent that Barber also alleges a violation of Rule 5.2 of the Mississippi Rules of Criminal Procedure, that claim was "cognizable on direct appeal," but it is "not cognizable in federal *habeas* [*corpus* review]." *See Lucio v. Lumpkin,* 987 F.3d 451, 472 (5th Cir. 2021) (citations omitted). "[A] 'federal court lacks authority to rule that a state court incorrectly applied its own law.'" *Id.* at 477 (citations omitted). A state prisoner may obtain relief under

---

[17] The Formal Discovery Disclosure reflects that "[t]here is no recorded interview" – noting that the only statement Barber made was that the pants he was wearing were not his, as noted in the police report. SCR, Vol. 1 at 51.

28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties *of the United States.*" *Engle v. Isaac,* 456 U.S. 107, 118 (1981) (emphasis added). A federal court may not act as a "super" [state] supreme court to review errors alleging an issue of state law. *See Wilkerson v. Whitley,* 16 F.3d 64, 67 (5th Cir. 1994); *see also Swarthout,* 562 U.S. at 219 (holding that errors under state law do not warrant federal habeas review). Hence, federal *habeas corpus* relief is unavailable to correct errors of state law – unless the state law error also constitutes a violation of federal law. *See West v. Johnson*, 92 F.2d 1385, 1401 (5th Cir. 1996).

Mississippi Rule of Criminal Procedure 5.2 governs initial appearances before the trial courts. Barber contends that he was subject to a "clear violation" of due process because the "purpose" of that rule is to "[e]nsure procedural compliance with *Miranda* [] and *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964)," as stated in the comments. Doc. 8 at 4. Barber's due process claim is a continuation of his argument that he was never advised of his rights under *Miranda*, which the court rejected as meritless because he was never interrogated by police; he simply did not make a statement during any custodial interrogation. Thus, Barber's state-law claim is also meritless.

Barber also appears to argue that the State violated his right to due process, but his claim nonetheless fails. Indeed, the State did not violate Barber's due process rights under the facts of his case on his initial arrest on the failure-to-appear warrant – or his later arrest after indictment on the methamphetamine charge. The record shows that officers had probable cause to arrest Barber *based on an outstanding failure-to-appear warrant*. Hence, Barber was not entitled to a separate probable cause hearing on that warrant. *See Glasper v. McCaskey,* No. 4:07CV84-M-B, 2008 WL 2699791, at *4 (N.D. Miss. June 30, 2008) (citing *Baker v. McCollum,* 443 U.S. 137, 143 (1979)) (holding that a "person arrested pursuant to a warrant, however, is not

constitutionally entitled to separate probable cause determination"); *accord Scott v. Banks,* No. 2:18CV156-TBM-LGI, 2021 WL 4497918, at *4 (S.D. Miss. July 21, 2021) (citation omitted) (same).

Indeed, Barber admits (and the state appellate record confirms) that he was released on bond after his initial arrest – but was later arrested under the 2020 indictment for methamphetamine possession, the charge at issue in the present case.   Doc. 1 at 5; SCR, Vol. 1 at 9–11, 14.   As the indictment establishes probable cause to arrest, Barber was not entitled to a separate probable cause determination.   *See Scott,* 2021 WL 4497918, at *4 (citing *Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991)) (holding that an "indicted detainee" is not entitled to an initial appearance or a   preliminary hearing); *see also* Miss. R. Crim P. 5.2(c) (stating that "[i]n all cases where the defendant is released from custody, or has been indicted by a grand jury, the defendant shall not be entitled to an initial appearance.")   As such, Barber has not shown that the state courts misapplied Rule 5.2 of the Rules of Criminal Procedure – or violated his right to due process.

Barber's argument in Ground Five challenging the trial court's application of a state court rule will thus be dismissed with prejudice for failure to present a cognizable claim for *habeas corpus* relief.   Additionally, the state court held that Barber's due process claim based on Rule 5.2 of the Miss. R. Crim. P. is meritless.   This ruling was neither contrary to, nor an unreasonable application of, any clearly established federal law.   In addition, Barber has not shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented.   For these reasons, Barber's claims in Ground Five regarding violation of Rule 5.2 of the Mississippi Rules of Criminal Procedure will be dismissed with prejudice.

### Ground Four:    Revocation of Parole[18]

In Ground Four, Barber argues that his right to protection from Double Jeopardy was violated because "he is serving a sentence imposed a 'second time'" for an "unlawful revocation" – and that the revocation did not occur within thirty days of his arrest.    Doc. 8 at 3–4; *see also* Doc. 1 at 14–15 (alleging "double jeopardy" violation in revocation proceedings). However, Barber has completed serving the sentence for which his parole was revoked.    MDOC records reflect that he completed service on the revocation and underlying 2016 sentence on July 14, 2022, and he is currently serving his eight-year 2020 sentence as a habitual offender.    *See* Doc. 13-1, MDOC Inmate Time Sheet ("Out of Trusty Status 07/14/22.    Removal from TET [Trusty Earned Time] due to starting Habitual Sentence.")    As he has completed the sentence in Cause No. CR2-16-0037 (upon which his revocation is based), this claim is now moot.

Whether a case is moot presents a jurisdictional question because it touches on the Article III requirement that a live controversy exist at all stages of federal court proceedings.    *Bailey v. Southerland,* 821 F.2d 277, 278 (5th Cir. 1987).    An issue becomes moot if it no longer presents a case or controversy.    *Spencer v. Kemna*, 523 U.S. 1, 12 (1998); *see also Adair v. Dretke,* 150 F. App'x 329, 331 (5th Cir. 2005).    Indeed, a valid case may become moot when an "intervening factual event … causes the [petitioner] to no longer have a present right to be vindicated or a stake or interest in the outcome."    *See Dailey v. Vought Aircraft Co.,* 141 F.3d 224, 227 (5th Cir. 1998) (citations omitted).    To hold that an issue is moot, the court must find that "it is impossible … to grant any effectual relief whatever to the prevailing party."    *United States v. Greer*, 59 F.4th 158, 160 (5th Cir. 2023) (citing *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct.

---

[18]  This claim involves the January 25, 2022, parole revocation as to the sentence of 2 years, 6 months on his conviction for possession of methamphetamine in DeSoto County Cause No. CR2016-0037.

1017, 185 L.Ed.2d 1 (2013). In this case, the court cannot now overturn or otherwise alter the revocation, which ended with the expiration of the underlying sentence. As such, this ground for relief will be dismissed as moot.[19]

### *Habeas Corpus* **Is Not the Proper Vehicle for a Defamation Claim**

Barber argues in a "Notice of Defamation" that he is "bring[ing] a claim of defamation" against "Judge Gerald W. Chatham, Sr."[20] Doc. 4 at 1. Barber alleges that the trial judge made a "defamatory statement" and was thus not "impartial," causing a "conflict of interest." Doc. 4 at 1. He references a statement made by the trial judge during sentencing that Barber was "just a penny-ante dopehead." SCR, Vol. 3 at 162; *see also* Doc. 4 at 2. However, a writ of *habeas corpus* under 28 U.S.C. § 2254, which provides relief "in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254 (a) (emphasis added.) *Habeas corpus* review is unavailable to review issues unrelated to the cause of detention. *Pierre v. United States,* 525 F.2d 933, 935 (5th Cir. 1976). Barber's "defamation" claim does not seek release from custody; as such his claim is not cognizable in this *habeas corpus* proceeding. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

The claim is also without substantive merit, as the trial judge used the term "penny-ante dopehead," not as an insult, but to emphasize that Barber was an elderly small-time criminal

---

[19] In any event, this claim is also without substantive merit, as "a petition to revoke probation or to revoke suspension of a sentence is not a criminal case and not a trial on the merits of the case and therefore double jeopardy does not apply." *See Gardner v. Panola County,* No. 3:23CV51-MPM-JMV, 2023 WL 3767061, at *8 (N.D. Miss. June 1, 2023) (citing *Williams* [v. *State*], 334 So. 3d [177], 184–85 [Miss. Ct. App. 2002; *see also Cortinas v. United States Parole Comm'n,* 938 F.2d 43, 46–47 (5th Cir. 1991).

[20] As an initial matter, Barber's claim fails, as Judge Chatham enjoys absolute judicial immunity. *Forrester v. White*, 484 U.S. 219 (1988)

facing a big-time criminal sentence of 16 years' incarceration. SCR Vol. 3 at 162-166. The judge noted that, as Barber is both elderly and in ill health, a 16-year sentence was tantamount to imprisonment for life. *Id.* The judge considered this matter and decided to impose a far lesser sentence of 8 years' imprisonment. *Id.* Thus, Barber's status as a small-time drug user ("penny-ante dopehead") led to a far lesser sentence than he would have faced had his criminal history been more serious. In addition, the trial judge based this description of Barber on his lengthy criminal history as a small-time drug *user* who was never convicted for *selling* drugs. *Id.* at 162-163. As such, though unflattering, the description was accurate. Thus, Barber suffered no harm from use of the accurate description (and, indeed, enjoyed an enormous benefit during sentencing) – this claim is also without substantive merit.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 24th day of September, 2024.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE